324 So.2d 707 (1975)
Mitchell C. TOUCHETTE, Appellant,
v.
Dorothy BOULD et al., Appellees.
U.S. CONCRETE PIPE COMPANY, a Florida Corporation, Appellant,
v.
Dorothy BOULD et al., Appellees (Three Cases).
HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant,
v.
Dorothy BOULD et al., Appellees.
Mitchell C. TOUCHETTE and Hartford Accident & Indemnity Company, Appellants,
v.
Dorothy BOULD et al., Appellees.
Nos. 74-100, 74-104 to 74-106, 74-235 and 74-236.
District Court of Appeal of Florida, Fourth District.
December 26, 1975.
Rehearing Denied January 28, 1976.
*709 Sam Daniels, Miami, for appellant-Hartford Accident & Indemnity Co.
Michael B. Davis of Walton Lantaff Schroeder Carson & Wahl, West Palm Beach, for appellant-Touchette.
James A. Smith and Richard Sherman of Wicker Smith Pyszka Blomqvist & Davant, Miami, for appellant-U.S. Concrete Pipe Co.
Edward A. Perse of Horton & Perse, and Fuller, Brumer, Moss, Cohen & Rodgers, Miami, for appellees-Bould, Simonson and Touchette.
OWEN, Judge.
Appellants, defendants in consolidated wrongful death and survivorship actions,[1] seek review of (1) adverse final judgments rendered pursuant to jury verdicts, and (2) certain postjudgment orders relating to costs and insurance coverage.
Sixty-six year old Edward Simonson and his sixty-four year old wife, Alice, were killed instantly when the vehicle they were occupying was struck from the rear by a tractor-trailer unit operated by Mitchell Touchette while in the course and scope of his employment by U.S. Concrete Pipe Company, the owner of the truck. Hartford Accident & Indemnity Company was the latter's liability insuror.
The decedents were not survived by any minor children and thus the cause of action for their wrongful death accrued to appellee, Dorothy Bould, who was the surviving natural mother of the decedent Alice Simonson and dependent upon both decedents for her support. The verdict and judgment awarded the wrongful death plaintiff, Dorothy Bould, $100,000 compensatory damages against Mitchell Touchette and U.S. Concrete Pipe Company.
Edward Simonson, Jr., an adult son of the decedents, qualified as personal representative of their respective estates and was the plaintiff in the survivorship action. The verdict and judgment awarded the survivorship plaintiff $65,000 compensatory damages against Mitchell Touchette and U.S. Concrete Pipe Company, $800,000 punitive damages against U.S. Concrete Pipe Company, and $5,000 punitive damages against Mitchell Touchette.
By postjudgment motions the court entered an order granting judgment in favor of U.S. Concrete Pipe Company against Hartford Accident & Indemnity Company "to the maximum limits of their (sic) insurance coverage of $500,000," and by a separate order taxed the plaintiff's costs. Both of these orders are the subject of separate interlocutory appeals.
For reasons hereafter discussed, we conclude that (1) the verdict and judgment for the wrongful death plaintiff, Dorothy Bould, is so grossly excessive and contrary to the law and evidence as to require reversal and remand for a new trial; (2) the verdict and judgment for the plaintiff, Edward Simonson, Jr., for compensatory damages in the survivorship action is so grossly excessive and contrary to the law and evidence as to require reversal and remand for a new trial; (3) the remand for a new trial on the compensatory damage claim of the personal representative requires reversal and remand for a new trial on the punitive damage claim as well. The interest of justice will be best served by a new trial on all issues.

WRONGFUL DEATH  COMPENSATORY DAMAGES
This cause of action vested in Dorothy Bould as a person dependent upon the decedents for support. The single element *710 of damage is the pecuniary value of the loss of support suffered by the plaintiff. W.B. Harbeson Lumber Co. v. Anderson, 102 Fla. 731, 136 So. 557 (1931); Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894).
Stated most favorably to appellee, the evidence established the following: Dorothy Bould, the mother of decedent Alice Simonson, was eighty-seven years old when Edward and Alice Simonson were killed, and ninety years old at the time of trial. She had been living with and supported by the Simonsons for twenty-five years prior to their death and enjoyed a close and stable relationship with them. At the time of their death she was in excellent health, had a very acute mind, was well-oriented to her surroundings, totally ambulatory and led a relatively normal life. The value of the support which the Simonsons furnished her had been stated by them on their income tax returns as being $1,000 per year. Approximately two years after the accident, Mrs. Bould moved to a nursing home where she remained at a cost to her of $5,720 a year, presumably receiving the equivalent of the support she had received in the Simonson home. In the three-year interval between the accident and the trial, Mrs. Bould remained in reasonably good health and sound mind although she became confined to a wheelchair. At age ninety it was shown that under the standard mortality table she had a reasonable life expectancy of approximately three and a half years.
Appellants urge that Mrs. Bould's damages can be determined with almost mathematical precision, i.e., $1,000 a year for the first two years following the accident, then $5,720 for the third year when she moved into the nursing home, and $17,192[2] for the future, yielding a total sustainable verdict of $24,912. However, the concept that this type of damage award can be computed with mathematical certainty was rejected by our Supreme Court in the case of Cudahy Packing Co. v. Ellis, 105 Fla. 186, 140 So. 918 (1932). Likewise, in that same case the court made it clear that the jury's verdict cannot be predicated on conjecture, fancy caprice or speculation, but that, "the jury must rest its verdict on considerations of real substance." 140 So. at 919.
At trial Mrs. Bould's claim for loss of support necessarily fell into two parts, the past loss and the future loss. Indulging every assumption in favor of the validity of the verdict, the jury could have included an allowance of as much as $17,160 (three years at $5,720 per year) for the past loss of support. This would mean, of course, that the jury necessarily included in the verdict an allowance of approximately $83,000 as the present value of the future loss of support. Mrs. Bould was then age ninety. While the jury was certainly not bound by the mortality table life expectancy of three and a half years, and could reasonably have found that the cost to her to replace the lost support would increase above $5,720 per year, there are no matters of real substance in the evidence which could fairly support an award of this magnitude as the present value of the future loss of support. By way of illustration, $83,000 invested at 5% compound interest would yield an annuity slightly over $7,000 per year for 18 years. Even indulging the jury in the broadest possible discretion, such an award finds no support in the record and can only be characterized as being the result of conjecture, fancy caprice or speculation on the part of the jury. It was error to deny the defendants' motion for a new trial on the grounds of the excessiveness of this verdict.

SURVIVAL ACTION  COMPENSATORY DAMAGES
Edward Simonson, Jr., son of the decedents, was the personal representative of their respective estates and the plaintiff in the survivorship action brought under *711 Fla. Stat. § 46.021 (1971). The proper elements of damage recoverable under this statutory provision are the decedent's pain and suffering, medical expenses, loss of earnings between the time of the accident and death, funeral expenses, and (in an appropriate case) punitive damages. See, Martin v. United Security Services, Inc., 314 So.2d 765 (Fla. 1975); Atlas Properties, Inc. v. Didich, 226 So.2d 684 (Fla. 1969); Sinclair Refining Co. v. Butler, 190 So.2d 313 (Fla. 1966); Ellis v. Brown, 77 So.2d 845 (Fla. 1955); Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213 (1946).
The decedents having been killed instantly, there was no conscious pain and suffering, no medical expense and no loss of earnings. Plaintiff did establish funeral expenses and property damage totalling $3,945.
Under the survival statute there can be no recovery by a personal representative for loss of the decedent's prospective estate, Ellis v. Brown, supra; Atlantic Coast Line Railroad Company v. Turpak, 225 So.2d 340 (2nd DCA Fla. 1969). Nonetheless, this element of damage was plead by the plaintiff and tried without objection by defendants (and hence by implied consent), and the jury was instructed thereon with the acquiescence of the defendants. Appellee contends that if it was error for the jury to be instructed on loss of prospective estate as an element of plaintiff's damages, this was invited error which cannot be remedied on appeal. See, e.g., Bianchi v. State, 272 So.2d 8 (3rd DCA Fla. 1973). Appellants contend that it is fundamental error involving lack of subject matter jurisdiction, which cannot be waived and can be raised by the parties at any time. See, 8 Fla.Jur., Courts, § 114 (1956); Rule 1.140(h) RCP; Rule 3.7(i) F.A.R.. We need not decide that precise issue however, because we conclude that even if defendants may not now question the inclusion of this element of damages in the instructions to the jury, the verdict is without sufficient evidence to support it, and therefore the judgment must be reversed. Renuart Lumber Yards, Inc. v. Levine, 49 So.2d 97 (Fla. 1950).
At the time of his death Edward Simonson was retired from his employment with a bus company, receiving retirement benefits of $138 a month. He also received (jointly with his wife) social security in the amount of $254 a month. For years prior to his death, he had a part-time, in-home job repairing radios and television sets which produced approximately $50 a week in income while he was employed fulltime for the bus company. He had acquired the full complement of equipment necessary to carry on such business and he and his brother-in-law, who had been assisting him in the work, had intended to go into this type of business full-time after the brother-in-law had retired in a few years. Additionally Mr. Simonson earned approximately $25 a week at other odd jobs. His mortality table life expectancy was 13.22 years. Mrs. Simonson, aged sixty-four, was earning $30 a month as a cleaning lady at a church and had a mortality table life expectancy of 14.45 years. At the time of their tragic deaths, the Simonsons left a total joint estate with a value of approximately $17,000, the bulk of which represented proceeds from policies of life insurance on their lives. Their joint income tax returns indicated total income of approximately $6,500 in each of 1968 and 1969, and $4,600 in 1970.
Excluding from the verdict the sum of $3,945 representing the funeral expenses and property damage loss, the jury necessarily awarded in the survivorship action the sum of $61,000 as the present value of the decedents' prospective estates had they lived out their normal lives. If $61,000 represents the present value, then the jury would necessarily have found that the aggregate prospective estate which the decedents would have accumulated had they lived out their normal lives would have been substantially larger. By way of example, if it could be assumed that the decedents *712 had a joint life expectancy of 14 years and that a prudent and safe investment could be made at 5% per annum compounded, $61,000 represents the present worth of $120,780 fourteen years hence.[3] While it is true that the jury could have determined that the decedents' joint life would be some lesser number than 14 years, and thus $61,000 would represent the present value of a somewhat smaller prospective estate than the $120,780 used in the illustration, the decedents would by the same token have had fewer years to accumulate such. Conversely, if the jury felt that the decedents had a joint life greater than the 14 years used in the illustration, the $61,000 award would represent the present value of a sum greater than the $120,780 mentioned, though the decedents would have had a longer period of time within which to accumulate such. The point is simply this. No matter what combination of factors the jury may have felt justified in utilizing, the end result amounts to a finding that the decedents, already at retirement age, would somehow thereafter start accumulating several thousand dollars a year (over and above all normal living expenses) for the remainder of their joint life, presumably from a new and unproven business venture. The evidence simply will not support such a finding. The well-recognized general rule in this state is that anticipated business profits are too remote, speculative and contingent to warrant a judgment for their loss, Home Development Company of St. Petersburg, Inc. v. Bursani, 178 So.2d 113 (Fla. 1965); Myrick v. Miller, 256 So.2d 255 (3rd DCA Fla. 1971); Niagara Therapy Manufacturing Corporation v. Niagara Cyclo Massage of Miami, Inc., 196 So.2d 474 (3rd DCA Fla. 1967); 9A Fla.Jur., Damages, §§ 81-82, & 85 (1972). An exception to this rule does allow recovery of such damages where the business involved is an established one and the amount of actual loss can be ascertained with reasonable certainty based upon competent proof of the business' history of profit and loss. Myrick v. Miller, supra; Niagara Therapy Manufacturing Corporation v. Niagara Cyclo Massage of Miami, Inc., supra. Clearly, however, the facts before us here cannot bring this case within this exception to the general rule: the decedents' business was not even founded, much less "established" at the time of their death and, without a profit and loss history, the amount of actual damages could not be ascertained with any reasonable certainty. The verdict can only be explained as rank conjecture or speculation on the part of the jury. If appellate review of verdicts alleged to be excessive is a viable principle, then this is clearly a proper case for it. In fairness, there is very little evidence from which it could be fairly and reasonably inferred that during the remainder of their respective lives, the decedents would have enjoyed any appreciable income in excess of their normal day-to-day needs. See, Seaboard Coast Line Railroad Corporation v. Robinson, 263 So.2d 626 (2nd DCA Fla. 1972).

SURVIVAL ACTION  PUNITIVE DAMAGES
Having concluded that the judgment for compensatory damages in favor of the survivorship plaintiff must be reversed, it follows, and we so hold, that the award of punitive damages to the survivorship plaintiff must also be reversed. This conclusion is premised upon two well-established principles of law: (1) punitive damages are not recoverable unless actual (compensatory) damages are shown, McLain v. Pensacola Coach Corporation, 152 Fla. 876, 13 So.2d 221, 222 (1943); Miami National Bank v. Sobel, 198 So.2d 841, 842 (3rd DCA Fla. 1967); Ging v. American Liberty Insurance Company, 293 F. Supp. 756, 760 (N.D.Fla. 1968), and (2) punitive damages must bear some reasonable, albeit *713 imprecise, relation to the actual, or compensatory, damages, International Union of Operating Engineers, Local #675 v. Lassitter, 325 So.2d 408 (4th DCA Fla. 1975); Lan-Chile Airlines, Inc. v. Rodriguez, 296 So.2d 498 (3rd DCA Fla. 1974); Air Line Employees Association, International v. Turner, 291 So.2d 670 (3rd DCA Fla. 1974); Hutchinson v. Lott, 110 So.2d 442 (1st DCA Fla. 1959); Crowell-Collier Pub. Co. v. Caldwell, 170 F.2d 941, 944 (5th Cir.1948); Ging v. American Liberty Insurance Co., supra.
In the case of Baynard v. Liberman, 139 So.2d 485 (2nd DCA Fla. 1962), the plaintiff had recovered a judgment for compensatory damages from which the defendant appealed. Plaintiff cross-assigned as error the order striking his prayer for punitive damages, and sought by the cross-appeal to have the judgment for compensatory damages affirmed with a remand for trial limited only to punitive damages. The court, in an opinion written by Judge Culver Smith, held that the court was without power to remand for a new trial limited to one particular item of damage. In the case of DuPuis v. 79th Street Hotel, Inc., 231 So.2d 532 (3rd DCA Fla. 1970), the plaintiff recovered a judgment for both compensatory and punitive damages and on appeal the court found that the award for compensatory damages was not supported by the record. Initially the court reversed only the award of compensatory damages and remanded for a new trial on that issue alone, but upon rehearing modified the earlier decision by requiring a new trial on both compensatory and punitive damages. The court stated, at 536: "The court has determined that better practice and procedure requires that one jury determine both the compensatory and punitive damages." We have already placed our imprimatur on this procedure, International Union of Operating Engineers, Local # 675 v. Lassitter, supra, and we now hold on the authority of the abovecited cases that if punitive damages are to be awarded it must be by the same jury that awards the compensatory damages.
Because of this disposition of the case we find it unnecessary to decide other issues raised by the parties on these consolidated appeals.
The judgments are severally reversed and these causes remanded for a new trial on all issues.
Reversed and remanded.
MAGER and DOWNEY, JJ., concur.
NOTES
[1] The decedents' death occurred on January 15, 1971 and thus these actions were under the "old" Wrongful Death Act, former Fla. Stat. §§ 768.01-768.03 (1971), and the Survivorship Statute, Fla. Stat. § 46.021 (1971), the "new" Wrongful Death Act, Fla. Stat. §§ 768.16-768.26 (1973) being inapplicable. See, McKibben v. Mallory, 293 So.2d 48 (Fla. 1974).
[2] Three and a half years at $5,720 reduced to present worth at 7%.
[3] See, Documents #44 and #46, pages 741, 743, respectively, Florida Jurisprudence Desk Book (1968).