349 So.2d 1181 (1977)
Dorthy BOULD and Edward Simonson, Jr., As Administrator of the Estates of Edward and Alice Simonson, Both Deceased, Petitioners,
v.
Mitchell C. TOUCHETTE, U.S. Concrete Pipe Company, a Florida Corporation, and Hartford Accident & Indemnity Company, Respondents.
No. 48935.
Supreme Court of Florida.
July 28, 1977.
Rehearings Denied September 13, 1977.
*1182 Edward A. Perse of Horton, Perse & Ginsberg and Brumer, Moss, Cohen & Rodgers, Miami, for petitioners.
Michael B. Davis of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for Mitchell C. Touchette, Richard A. Sherman of Wicker, Smith, Blomzvist, Davant, McMath, Tautan & O'Hara, Miami, for U.S. Concrete Pipe Company.
Sam Daniels, Miami, for Hartford Accident & Indemnity Co.
ADKINS, Acting Chief Justice.
By petition for certiorari we have for review a decision of the District Court of Appeal, Fourth District (Touchette v. Bould, 324 So.2d 707) which allegedly conflicts with decisions of this Court and the District Court of Appeal on the same point of law. The District Court held that punitive damages must bear some reasonable, albeit imprecise, relation to the actual, or *1183 compensatory, damages, citing International Union of Operating Engineers, Local No. 675 v. Lassitter, 325 So.2d 408 (Fla.4th DCA 1975). We accepted jurisdiction of Lassitter as being in conflict with Levine v. Knowles, 197 So.2d 329 (Fla.3d DCA 1967), and Hutchinson v. Lott, 110 So.2d 442 (Fla.1st DCA 1959). We have jurisdiction. Article V, Section 3(b)(3), Florida Constitution.
Having taken jurisdiction because of a conflict as to one question of law, U.S. Concrete Pipe Company says we should consider no other questions involved in the appeal before the District Court, as these questions were not raised in Bould's petition for certiorari seeking jurisdiction. This contention is without merit. If conflict appears and this Court acquires jurisdiction, we then proceed to consider the entire cause on the merits. As stated in this Court in Tyus v. Apalachicola Northern Railroad Company, 130 So.2d 580 (Fla. 1961):
"Since we have concluded that, on the face of the subject opinion of the District Court, it appears there can be no doubt about the question of direct conflict with many of our prior decisions, as well as the decision of the District Court of Appeal, ... it becomes our duty and responsibility to consider the case on its merits and decide the points passed upon by the District Court which were raised by appropriate assignments of error as completely as though such case had come originally to this court on appeal." At 585.
See also Brown v. State, 206 So.2d 377 (Fla. 1968), and D'Agostino v. State, 310 So.2d 12 (Fla. 1975).
Petitioners were plaintiffs in the trial court in consolidated wrongful death and survivorship actions prosecuted under the Florida Wrongful Death Act (Sections 768.01-768.03, Florida Statutes (1970), and the former survivorship statute, Section 46.021, Florida Statutes (1970)). The accident causing the death of Edward Simonson and Alice Simonson, his wife, occurred on January 15, 1971. So the present wrongful death statute is inapplicable here. McKibben v. Mallory, 293 So.2d 48 (Fla. 1974). The respondents were defendants in the trial court.
For clarity, the petitioners Dorothy Bould and Edward Simonson, Jr., will be referred to as "Bould" and "Simonson," U.S. Concrete Pipe Company as "Concrete Pipe," Mitchell C. Touchette as "Touchette," and Hartford Accident and Indemnity Company as "Hartford."
Sixty-six year old Edward Simonson and his sixty-four year old wife, Alice, were returning to Buffalo, New York, in a 1967 Ford Sedan, having concluded a retirement vacation in South Florida. Shortly before noon, on a clear day, they were forced to bring their vehicle to a stop at the end of a long line of traffic, as the road was under construction and traffic was being regulated by a flagman. The road was straight, flat and level for more than a mile before the actual construction site.
A pickup truck stopped back of the vehicle of the Simonsons. Shortly thereafter a large flat-bed semi-trailer truck bore down upon the stopped vehicles. The occupant of the pickup truck attempted to signal but, realizing that the semi-trailer truck would not be able to stop, attempted to turn his wheels. Without reducing speed, sounding a warning, or applying brakes, the operator of the semi-trailer truck struck the rear of the pickup truck, tossing it aside, and, continuing over the Simonson's vehicle, flattened it. The semi-trailer truck did not come to a stop until it had run through two other vehicles and collided with another large truck. The semi-trailer truck was being operated by Touchette in the course and scope of his employment by Concrete Pipe.
The cause of action for wrongful death accrued to Bould as the surviving natural mother of Alice Simonson and dependent upon both decedents for her support. Bould, the wrongful death plaintiff, received *1184 $100,000 compensatory damages against Touchette and Concrete Pipe.
Simonson, an adult son of decedents, qualified as personal representative of each estate and was plaintiff in the survivorship action, receiving an award of $65,000 compensatory damages against Concrete Pipe and Touchette, $800,000 punitive damages against Concrete Pipe, and $5,000 punitive damages against Touchette.
A motion for new trial was denied by the trial court. Upon appeal the District Court held that the verdict and judgment in each case was grossly excessive and contrary to the law and evidence. The District Court ordered a new trial "on all issues."
The principles of law to be applied in considering excessiveness of damages are stated in Talcott v. Holl, 224 So.2d 420 (Fla.3d DCA 1969), as follows:
"A party who assails the amount of a verdict as being excessive, has the burden of showing it is unsupported by the evidence, or that the jury was influenced by passion or prejudice. Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So.2d 376, 377; Florida Power & Light Co. v. Robinson, Fla. 1953, 68 So.2d 406, 415. A verdict which has been approved by the trial court as to amount should not be disturbed on appeal if it has a reasonable relation to the damages proven, in the absence of a showing that it imposes a hardship out of proportion to the injury suffered. Margaret Ann Super Markets, Inc. v. Scholl, 159 Fla. 748, 34 So.2d 238; Florida Power & Light Co. v. Robinson, supra.
"In Sproule v. Nelson, Fla. 1955, 81 So.2d 478, 481, 76 A.L.R.2d 1066, the Supreme Court, speaking through the late Justice Glenn Terrell, said:
"`There is an element of speculation in most personal injury verdicts, but this is a matter for jury discretion. The court may review their discretion but not the amount awarded unless shown to be clearly arbitrary. * * *'
"The determination of the amount of such damages is peculiarly within the province of the jury. Higbee v. Dorigo, Fla. 1953, 66 So.2d 684; Merwin v. Kellems, Fla. 1955, 78 So.2d 865; Sproule v. Nelson, supra.
"In Upton v. Hutchison, Fla. 1950, 46 So.2d 20, 21, the Supreme Court said: `It is well settled that the verdict of a jury will not be disturbed by this court on appeal where there is ample substantial evidence to support such verdict. Nor will this court substitute its judgment for that of the jury as to the amount of damages to which the plaintiff is entitled, unless the amount found is so excessive as to indicate that the jury was influenced by passion, prejudice, corruption, or other improper motive. Loftin v. Dagley, 152 Fla. 831, 13 So.2d 311; Florida Motor Lines Corp. v. Shontz, 159 Fla. 518, 32 So.2d 248.'" At 422.
In determining whether a verdict is excessive, vague expressions by the courts about "conscience-shocking amounts" do not furnish the enlightenment that the public should expect from judges about how they arrive at their decisions. The problem of determining whether a verdict is excessive is not so subjective as to prevent the formulation of standards to be used in the exercise of the court's power. Nor should judges have the unfettered latitude for decision that might be afforded by the imprecision of the rules that they themselves formulated.
Where recovery is sought for a personal tort, or where punitive damages are allowed, we cannot apply fixed rules to a given set of facts and say that a verdict is for more than would be allowable under a correct computation. In tort cases damages are to be measured by the jury's discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately *1185 large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate. Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1977), approving the reasoning in Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (5th Cir.1970).
We first consider the award of $100,000 in the wrongful death case. Bould was entitled to recover pecuniary loss of support as damages and was not entitled to recover for mental anxiety and suffering. The single element of damage was the pecuniary value of the loss of support suffered by Bould. This does not mean that the recovery is limited to a present value of anticipated support which must be measured to a mathematical certainty. The rule is discussed in Cudahy Packing Co. v. Ellis, 105 Fla. 186, 140 So. 918 (1932):
"The weight of authority supports the rule that more than ordinary discretion may be allowed the jury in assessing damages in actions for wrongful death. They are not limited to a consideration of the age and probable life expectancy of the dependents, neither are they limited to a consideration of the age, earning power, and probable life expectancy of the deceased. They may consider the probable increased needs of the dependents and the probabilities of the deceased contributing to such increased needs. They may also consider the degree or spirit in which the deceased responded to his obligation to contribute to the support of his dependents, the amount contributed in the past with probable future contributions, together with the likelihood of promotion, the relationship of those dependent on him, and increased income of the deceased. They may also consider the health, habits, morals, social adaptability, and possible other facts and circumstances, and then award damages that will reasonably compensate for the injury resulting from the wrongful death.
"Now as a lead or basis for the admeasurement of damages when guided by these considerations, courts in this country have generally approved a sum that would purchase an annuity equal to the value of the pecuniary aid which the dependents would have derived from the deceased; in other words, the present worth of such an amount as would accrue to the beneficiary based on his or her life expectancy." At 919.
Bould was 87-years old when her daughter was killed and 90-years old at time of trial. She was unemployed and had been supported by the Simonsons since 1945, enjoying a close relationship. Bould was in excellent health and was totally ambulatory. During the period between the accident and the trial, she became confined to a wheelchair and her need for support was thereby increased.
As the result of the death of the Simonsons, Bould was forced to move into a nursing home in Buffalo, New York, and at the time of trial had lost three years of support.
The jury was not legally bound to make a mathematically precise and minimal award which, apparently, was suggested by the District Court. The verdict of the jury was based upon criteria as set forth in Cudahy Packing Co. v. Ellis, supra, and was within and did not exceed the maximum limit of reasonable range within which the jury may properly operate. This is particularly true when we consider, as a matter of common knowledge, inflationary tendencies and steady increase in prices.
In recognizing the effect of inflation upon the amount of damages to be awarded, the court in Seaboard Coast Line R.R. Co. v. Garrison, 336 So.2d 423 (Fla.2d DCA 1976), said:
"[E]ven in the absence of any evidence whatsoever on this matter, we think it likely that juries will consider the impact of future inflation. Inflation has become a fact of life within the experience of everyone. It has continued to a greater or lesser extent throughout most of our lifetimes. Most people have found it necessary *1186 to reckon with this in their own financial planning for the future. Certainly injuries, which are drawn from citizens from every walk of life, are aware of the effects of inflation. Quite likely they will be prone to consider it in their attempts to fully compensate a plaintiff." At 424.
We next consider the award of $65,000 compensatory damages in the survivorship action. As pointed out by the District Court of Appeal, there could be no recovery under the survival statute by the personal representative for loss of the decedent's prospective estate.
"Nonetheless, this element of damage was plead by the plaintiff and tried without objection by defendants (and hence by implied consent), and the jury was instructed thereon with the acquiescence of the defendants. Appellee contends that if it was error for the jury to be instructed on loss of prospective estate as an element of plaintiff's damages, this was invited error which cannot be remedied on appeal." 324 So.2d at 711.
However, it is contended that this was fundamental error involving lack of subject matter jurisdiction, which cannot be waived and can be raised by the parties at any time. The District Court of Appeal did not pass upon this question.
A party cannot complain on appeal of the adoption of a rule of damages in accordance with the theory upon which he tried the cause, although it was the wrong rule. See 22 Am.Jur.2d Damages § 346, at 450; 5 Am.Jur.2d Appeal and Error § 640, at 95; New York Lake Erie and Western Railroad Co. v. Estill, 147 U.S. 591, 13 S.Ct. 444, 37 L.Ed. 292 (1892); City of Ottumwa v. Nicholson, 161 Iowa 473, 143 N.W. 439 (1913); Gibson Properties Co. v. City of Oakland, 12 Cal.2d 291, 83 P.2d 942 (1938); Wolfsen v. Hathaway, 32 Cal.2d 632, 198 P.2d 1 (1948); Wharam v. Investment Underwriters, 58 Cal. App.2d 346, 136 P.2d 363 (1943); Stegmeier v. Gappert, 190 N.W.2d 36 (N.D. 1971); Okmulge County, etc. v. Robnett, 368 P.2d 502 (Okl. 1962).
To hold that the inclusion of this element of damages in the instructions to the jury was fundamental error would mean that every instruction on damages would be subject to attack on appeal without the necessity of making any objection during the trial of the case. We hold that this was not a fundamental error, but was an invited error which could not be raised for the first time upon appellate review.
The jury award of $65,000 was the total compensatory damages to the survival action plaintiff acting as the administrator of both estates. For the reasons discussed in considering the amount of the award in the wrongful death case, we hold that the verdict was not so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate. Lassitter v. International Union of Operating Engineers, supra.
In the survivorship action the jury awarded $800,000 punitive damages against Concrete Pipe and $5,000 against Touchette. Having concluded that the judgment for compensatory damages must be reversed, the District Court of Appeal held that the award of punitive damages should also be reversed. The District Court of Appeal relied upon the rule that punitive damages must bear some reasonable, albeit imprecise, relation to the actual or compensatory damages. We have disavowed this rule. Lassitter v. International Union of Operating Engineers, supra.
Concrete Pipe contends the punitive damage award was excessive. Guidelines for the assessment of punitive damages are contained in Joab, Inc. v. Thrall, 245 So.2d 291 (Fla.3d DCA 1971).
"The allowance of punitive damages is discretionary with a jury and the fixing of the amount is peculiarly within its province. Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631 (1933); and Florida East Coast Ry. Co. v. Morgan, Fla.App. 1968, 213 So.2d 632.
"In awarding punitive damages the jury may properly punish each wrongdoer *1187 by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt; and the verdict shall state separately the amount of punitive damages. Lehman v. Spencer Ladd's, Inc., Fla. 1966, 182 So.2d 402... ." At 293.
See also Atlas Properties, Inc. v. Didich, 226 So.2d 684 (Fla. 1969).
Concrete Pipe's net worth at the time of trial was $13,145,000, so the punitive damage award amounted to 6.2 per cent of its total net worth. This award is not so gross as to raise the spector of bankruptcy, and is totally consistent with the guidelines established by the above authorities. See also, Sperry Rand Corp. v. A.T.O., Inc., 447 F.2d 1387 (4th Cir.1971) (punitive damages $175,000, net worth $750,000, approved); Fuchs v. Kupper, 22 Wis.2d 107, 125 N.W.2d 360 (1963) (punitive damages 12 1/2 per cent net worth approved); Malco, Inc. v. Midwest Aluminum Sales, 14 Wis.2d 57, 109 N.W.2d 516 (1961) (punitive damages 7 1/2 per cent net worth approved).
Touchette says punitive damages were improperly awarded against him because there was no evidence of his net worth.
In Rinaldi v. Aaron, 314 So.2d 762 (Fla. 1975), we said:
"[E]vidence of financial worth is admissible and may be considered by the jury in its determination of the amount to be awarded as punitive damages, but evidence of worth is not a requisite to such award. If defendant's financial worth is meager, it would be to his advantage to introduce such evidence in order to mitigate the damage award." At 765.
In the absence of any evidence as to the net worth of Touchette, we cannot say that the award was excessive.
By post-judgment motion the trial court entered an order granting judgment in favor of Concrete Pipe against Hartford to the maximum limits of insurance coverage of $500,000, and by a separate order taxed the plaintiff costs. These orders were the subject of separate interlocutory appeals. Because of the disposition of the case, the District Court of Appeal did not pass upon this question.
For the above reasons the decision of the District Court of Appeal is quashed and the cause is remanded with instructions to further remand same to the trial court for reinstatement of the judgments.
The District Court of Appeal is further directed to entertain the interlocutory appeals from the post-judgment motions of the trial court.
It is so ordered.
BOYD, ENGLAND, SUNDBERG and KARL, JJ., concur.