In Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), this Court held that a corporate employer is not vicariously liable for punitive damages caused by the willful and wanton conduct of a driver of its vehicle unless, in addition to the driver's misconduct, there is some fault or negligence by the employer. This separate fault of the employer, if coupled with wanton conduct of the employee, need not be of a willful or wanton nature to make the employer liable for punitive damages. We could, and perhaps should, have gone further and held that an employer was not liable for punitive damages arising from the willful and wanton misconduct of a driver of its motor vehicle unless the employer himself was guilty of some flagrant misconduct.
The instruction given by the trial judge in this case was consistent with Mercury Motors. It followed the urging of plaintiffs' counsel and was predicated upon a recitation of 25 C.J.S. Damages § 125(4) (1966). The plaintiffs' complaint alleged that the employer knew its driver was tired due to excessive driving. They also urged at trial that, because of his history of accidents, the employer negligently retained him as a driver. It was upon one of these allegations, coupled with the wanton conduct of the driver, that the jury predicated its award, which this Court affirmed. Bould v. Touchette, 349 So.2d 1181
(Fla. 1977). It was urged in Bould that the punitive damages were improper because they were excessive and shared no rational basis with the compensatory damages. Those contentions were rejected.
Hartford's policy of insurance provides:
 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage. *Page 1070 
Its policy specifically neither includes nor excludes punitive damages. I have a problem equating "punitive damages" to "damages because of bodily injury" and even without public policy considerations question coverage for punitive damages since those damages do not arise from bodily injury or property damage but rather as punishment for misconduct. In any event, since there was some complicity of U.S. Concrete Pipe which caused it to be subject to the punitive damages award, I am persuaded that the better view would be to hold that public policy prevents insurance protection for liability for punitive damages in this type of situation. To support this conclusion I cite with approval and adopt Nicholson v. American Fire CasualtyInsurance Co., 177 So.2d 52 (Fla.2d DCA 1965). That decision in turn cited Northwestern National Casualty Co. v. McNulty, 307 F.2d 432
(5th Cir. 1962), which I approve. I recognize that public policy does not prevent insurance coverage for punitive damages in instances where the liability is purely vicarious. I distinguish this by saying that in this case the jury found, as it was required to do, some personal involvement of the employer with the employee's wanton conduct when it sent an employee who, because of his physical condition or driving habits, was prone to being involved in an accident. I repeat the following language inNorthwestern:
 The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well [as] nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.
Id. at 440-41. I would hold that U.S. Concrete Pipe alone, without the aid of insurance, should pay the punitive damages award.*
OVERTON, J., concurs.
* In Bould v. Touchette, 349 So.2d 1181 (Fla. 1977), we noted that the punitive damages award here amounted to 6.2% of the net worth of U.S. Concrete Pipe and was consistent with the policy of hurting, but not bankrupting, one for conduct resulting in punitive damages.