WETHERELL, J.,
concurring in part and dissenting in part.
I agree with the majority that RJR’s first issue on appeal was not adequately preserved (and it is without merit in any event); that Martin is controlling as to the second and third issues; and that the punitive damage award is constitutionally excessive and must be reversed.[11] However, for the reasons that follow, I would also reverse the compensatory damage award.
I joined the opinions affirming the judgments in two prior Engle progeny cases, Martin and R.J. Reynolds Tobacco Co. v. Hall, 70 So.3d 642 (Fla. 1st DCA 2011), but I cannot join the decision in this case. The $5 million non-economic damage awards in Martin and Hall raised my proverbial judicial eyebrow, but the $10.8 million[12] award in this case shocks my judicial conscience. Cf. Laskey v. Smith, 239 So.2d 13, 14 (Fla.1970) (observing that “[n]ot every verdict which raises a judicial eyebrow should shock the judicial conscience”).
I recognize that a damage award should not be declared excessive simply because it *317 is “conscience-shocking” or exceeds the amount the court considers appropriate; rather, as the majority explains, the award should only be disturbed by the court if it is “so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.” Bould v. Touchette, 349 So.2d 1181, 1184-85 (Fla.1977); see also Lassitter v. Int’l Union of Operating Eng’rs, 349 So.2d 622, 627 (Fla.1977). This standard is, as it should be, difficult to meet. However, unlike the majority, I am persuaded that the compensatory damage award in this case meets this standard.
The award is comprised of only non-economic damages for the emotional suffering experienced by Appellee as a result of the death of her husband from lung cancer. I do not question that Appellee’s suffering from the loss of her husband is real and significant and, like the majority, I recognize that these types of damages are inherently difficult to measure and that the task of doing so is typically left to the jury. However, juries do not have free reign to turn widows of life-long smokers into decamillionaires simply because RJR is “a deep-pocket defendant and ‘a present-day popular villain’ ”[13] and non-economic damages are difficult to measure. That is apparently what happened in this case because there is absolutely nothing in the record that would justify anything close to an eight-figure award for Appel-lee’s emotional suffering.
When the damages awarded by the jury have no logical or rational relationship to the extent of the injury suffered by the plaintiff or when the award was unduly influenced by passion and prejudice, the court can and should remit the award or order a new trial on damages. See generally § 768.74, Fla. Stat. (1995) (requiring courts to closely scrutinize damage awards to ensure that they are not excessive using criteria similar to those discussed in Bould and the cases cited therein). The cases cited by Appellee in an attempt to justify the excessive compensatory damage award in this case involved awards to parents for the death of a child,[14] which is a far more traumatic loss than the loss of a spouse to lung cancer after a lifetime of smoking. Cf. Winner v. Sharp, 43 So.2d 634, 637 (Fla.1950) (“Those who have not brought a child into the world and loved it and planned for it, and then have it suddenly snatched away from them and killed can hardly have an adequate idea of the mental pain and anguish that one undergoes from such a tragedy. No other affliction so tortures and wears down the physical and nervous system.”). Additionally, in the McQuillin case relied on by Appellee and the majority, the Fifth District made a point of noting that the $4.4 million non-economic damage award in that case (for a 7-year-old child who lost his mother in a “horrific” car accident) was “on the outer limit in size.” See 840 So.2d at 347.
The non-economic damage award in this case is $6.4 million larger than the “outer *318 limit” identified in McQuillin,[15] and, in my view, the sheer size of the award is a clear indication that the jury was acting on passion and prejudice. Indeed, the only conceivable explanation for the amount of the award comes from Appellee’s closing argument, where her trial counsel suggested that the jury could use the annual compensation of one of RJR’s experts (Dr. Thomas) and one of its executives (Dr. Gentry) as “reasonable gauges or measuring sticks” to value the time Appellee lost with her husband as a result of his premature death from lung cancer. Although the amount awarded by the jury is towards the low end of the range suggested by counsel,[16] there is no logical or rational relationship between the amount RJR pays its executives and experts for their work and the emotional injury suffered by Appellee. Rather, it appears that this false comparison was merely intended to shift the jury’s focus in assessing damages onto the wealth of the defendant who caused the damages, and to that end, counsel’s argument was nothing more than a thinly-veiled invitation for the jury to lavishly compensate Appellee for the death of her husband simply because RJR could afford to do so. This argument was improper because compensatory damages should be based on the loss suffered by the plaintiff, not the defendant’s ability to pay; however, it clearly worked, as reflected by the eight-figure compensatory damage award assessed by the jury.
I recognize that RJR did not object to this argument at trial or raise it as an issue on appeal, and I am not necessarily suggesting that the argument would have met the Murphy test and required reversal had it been raised on appeal. However, the substance of this argument fortifies my view that the jury’s compensatory damage award was based on passion, prejudice, or other improper considerations (namely, RJR’s ability to pay a large award), and not a legitimate assessment of Appellee’s emotional loss. Accord Gresham v. Courson, 177 So.2d 33, 39 (Fla. 1st DCA 1965) (finding support for the conclusion that non-economic damage award was excessive in the fact that the amount awarded by the jury was “the exact amount suggested by counsel for plaintiff in the course of oral argument to the jury and does not appear elsewhere in the trial proceedings.”). Indeed, aside from this argument, there is no way to explain the eight-figure compensatory damage award in this case because the evidence of Appel-lee’s non-economic damages consisted of little more than her testimony describing her long and happy marriage and testimony that her husband’s death has been “very hard” on Appellee. Surely the law *319 requires more than a sympathetic plaintiff testifying that she is saddened by the death of a loved one to justify such a large non-economic damage award.
While I have no trouble concluding that the $10.8 million non-economic damage award in this case is excessive, I do not have a precise answer for what the award should be.[17] However, for the reasons that follow, it appears to me that the high end of a reasonable range of non-economic damages in a case such as this is no more than $5 million.[18]
The compensatory damage award in this case is well outside of this range, and according to the verdict information provided by Appellee,[19] it is one of the highest awards in the Engle progeny cases tried to verdict thus far. The award is one of only five compensatory damage awards exceeding $10 million and it is more than twice the median award.[20] Additionally, the award in this case is five times the largest non-economic damage award upheld by the Florida Supreme Court in Engle,[21] $8 million more than the largest non-economic damage award affirmed by this court in an *320 Engle progeny case,[22] nine times the largest non-economic damage award affirmed by any other district court in an Engle progeny case,[23] and almost 87 times larger than the non-economic damage award to the surviving spouse affirmed in Philip Morris USA, Inc. v. Lukacs, 34 So.3d 56 (Fla. 3d DCA 2010).[24] These comparisons highlight the excessiveness of the compensatory damage award in this case and support my view that the award is far outside the reasonable range within which the jury may properly operate.
Accordingly, for the reasons discussed above, I would hold that the trial court abused its discretion in denying RJR’s motion for a new trial on damages or remitti-tur, and either reduce the pre-apportionment award (as this court did in Gresham and as the Third District did in Goldberg[25]) to no more than $5 million, or remand the case for a new trial on damages. See Rowlands, 549 So.2d at 1382 (“[Wjhere the only problem is a dollar award so excessive to shock the conscience of the court, the trial court has discretion to deny the defendant’s motion for new trial if the plaintiff will accept a remittitur that reduces the award by subtraction to the maximum recovery supported by the evidence.”) (emphasis in original and footnote omitted); § 768.74(2), (4), Fla. Stat. (1995) (same).

.- Although I agree with the reversal of the punitive damage award, I disagree with the statement in the majority opinion that "a 1 to 1 ratio is unwarranted” in this case. On this issue, I recognize the reprehensibility of RJR’s conduct over the years in marketing an addictive product it knew would harm its users while at the same time actively misleading the public about the serious health risks of smoking, and I also recognize that RJR has likely made many billions of dollars over the years from selling cigarettes. Nevertheless, it seems to me that a 1-to-l ratio may very well be appropriate on remand because the $10.8 million compensatory damage award is, as the majority notes, "substantial by any measure” and it clearly includes a punitive component already. Indeed, in the "instructive” Boemer case cited by the majority, the court held that a ratio of approximately 1-to-l was constitutionally required based on a compensatory damage award that was $6.8 million less than the award in this case. See 394 F.3d at 603. I also disagree with the majority’s statement that punitive damages in this case should not be capped at the amount awarded in Martin, particularly in light of the majority’s observation (with which I agree) that there is "nothing in the record to suggest that RJR's conduct toward [Appellee] was any more wanton or reprehensible than it was toward [the plaintiff in Martin ].”

. I agree with the majority that the determination of whether a damage award is excessive should focus on the amount awarded by the jury, not the amount reduced by the plaintiff's comparative negligence. See note 4, supra.

. R.J. Reynolds Tobacco Co. v. Hall, 67 So.3d 1084, 1092 (Fla. 1st DCA 2011) (quoting Philip Morris, Inc. v. French, 897 So.2d 480 (Fla. 3d DCA 2004)).

. See, e.g., Goldberg v. Fla. Power & Light Co., 899 So.2d 1105 (Fla.2005) ($10 million award for parents of 12-year-old child killed in a motor vehicle accident); Parham v. Fla. Health Scis. Ctr., 35 So.3d 920 (Fla. 2d DCA 2010) ($12 million award, reduced by statute to $700,000, for parents of infant who died due to medical malpractice); Gen. Motors Corp. v. McGee, 837 So.2d 1010 (Fla. 4th DCA 2002) ($60 million award for family that was severely injured in a motor vehicle accident, with $15 million attributable to the emotional loss suffered by parents of 13-year-old child who died from serious burns he received in the accident).

. The majority’s statement that the award in this case is "certainly at the outer limit of reasonableness” appears to set (or, at least, imply) an upper limit on non-economic damage awards in future Engle progeny cases. However, I do not see how the "outer limit” set by the majority can be squared with the "outer limit” set by our sister court in McQuillin, particularly since that case involved a more traumatic loss. Also, I am concerned that the majority has "set the market” far too high and that by affirming the $10.8 million award in this case, the majority has made it nearly impossible for a court to declare an non-economic damage award up to that amount excessive in any future Engle progeny case. As a result, unless the Florida Supreme Court steps in, it appears that juries (at least in this District) will be free to continue awarding Engle plaintiffs non-economic damages that resemble Lotto jackpots simply because the tobacco company defendant has deep pockets and such damages are inherently difficult to measure.

. The amounts identified by counsel— $400,000 per year for Dr. Thomas and $2.6 million per year for Dr. Gentry — equate to $6 million to $39 million over Appellee’s remaining life expectancy.

. RJR did not provide the jury or the trial court any guidance on this issue. In fact, it was not until oral argument in this court that RJR first articulated what a proper compensatory damage award in this case might be; there, in response to a question as to what this court should remit the compensatory damage award to if that was the course the court took, RJR's counsel answered "ballpark ... a million dollars.” I recognize why a defendant would not want to "bid against itself” by suggesting a damage award to the jury that might be in excess of what the jury might otherwise be inclined to award, but the case law seems to require that in order to obtain a remittitur from the trial court, the defendant must be able to show what the maximum award should be based on the evidence presented. See Rowlands v. Signal Const. Co., 549 So.2d 1380, 1382 (Fla. 1989); Evering v. Smithwick, 526 So.2d 185, 186 (Fla. 3d DCA 1988) (citing Wackenhut Corp. v. Canty, 359 So.2d 430, 434 (Fla. 1978), for the proposition that "[t]he amount of the excess must be readily apparent from the record” to support a remittitur of the verdict). However, it seems to me that the failure to identify the amount of the excess would not preclude the trial court (or this court) from ordering a new trial on damages if it was convinced that the award was excessive.

. I recognize that this statement is difficult to square with the prior decisions of this court approving non-economic damage awards of as much as $7.8 million. See note 5, supra. However, I am not persuaded that the awards affirmed by this court to date are a representative sample of Engle progeny cases that should be used to "set the market” for the proper measure of damages in these cases.

. See Appellee’s Notice of Judgments and Request to Take Judicial Notice, filed Sept. 27, 2011; Appellee's Request to Take Judicial Notice,.filed Nov. 9, 2011.

. The median compensatory damage award is $4.5 million based on my calculations using the verdict information provided by Appellee. This figure excludes defense verdicts, but includes verdicts awarding both economic and non-economic damages, as well as verdicts in favor of multiple plaintiffs. Accordingly, the median non-economic damage award to a single plaintiff is likely much lower than $4.5 million. Additionally, many of these awards have yet to withstand appellate review.

. The Engle court reinstated the verdicts in favor of class representatives Farnan and Della Vecchia. See 945 So.2d at 1255, 1276. The total award to Farnan was $2.85 million, but only $1.6 million was for “intangible damages” such as her pain and suffering, mental anguish, and loss of capacity to enjoy life. See Engle v. R.J. Reynolds Tobacco Co., Case No. 94-08273CA, Verdict Form for Phase II, at 17-18 (Fla. 11th Jud. Cir. Apr. 7, 2000). The total award to Della Vecchia was $4,023 million, but only $3.5 million was for non-economic damages, and of that amount, $1.5 million was for the loss of companionship suffered by Della Vecchia’s surviving husband and $2 million was for the loss of parental companionship suffered by her surviving son. Id.

. Liggett Group LLC v. Campbell, 60 So.3d 1078 (Fla. 1st DCA 2011) (citing Martin in affirming $7.8 million non-economic damage award to spouse of deceased smoker).

. See R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707 (Fla. 4th DCA 2011) (affirming $1.2 million non-economic damage award to spouse of deceased smoker).

. The total award affirmed in Lukács was $24,835 million, but only $125,000 was for the surviving spouse's non-economic damages. The jury awarded the surviving spouse $12.5 million in non-economic damages, but the trial court remitted that award to $125,000 because the evidence did not justify damages of the magnitude awarded by the jury. See Lukacs v. RJ. Reynolds Tobacco Co., Case No. 01-03822 CA 23, at ¶¶9-10 (Fla. 11th Jud. Cir. Mar. 22, 2003) (Order on Remittitur).

. Fla. Power & Light Co. v. Goldberg, 856 So.2d 1011, 1028-29 (Fla. 3d DCA 2002) (summarily reducing damage award from $37 million to $10 million because that amount was not disputed by the defendant and "would not shock the conscience of the court, nor is it grossly disproportionate to awards in similar cases”), vacated on rehearing en banc, id. at 1034 n. 1 (Fla. 3d DCA 2003), reinstated, 899 So.2d 1105, 1108 (Fla.2005).