WIGGINTON, Acting Chief Judge.
Defendants have appealed a final judgment based upon a jury verdict awarding plaintiff both compensatory and punitive damages. The appeal challenges the sufficiency of the evidence to support the verdict, ánd questions the excessiveness of the damages awarded.
Appellee sued appellants in an action at law seeking both compensatory and punitive damages for personal injuries sustained by him as a result of an intentional tort-committed by appellant Dukes while acting within the scope of his authority as an employee of the corporate defendant, M R & R Trucking Company. Both appellants filed defenses of general denial and contributory negligence. Appellants’ motions for directed verdicts at the conclusion of appellee’s evidence, and at the conclusion of the trial, were denied as was their post-trial motion for new trial.
This cause of action arose as a result of a strike by plaintiff and his co-employees against the plant of Michigan Chemical Company located near Port St. Joe. Neither Dukes nor his corporate employer, M R & R Trucking Company, was involved in the strike, nor did either have any interest in that controversy but was merely carrying out a contract for hauling materials into and out of the struck plant when the hereinafter events occurred.
On the afternoon in question plaintiff and one of his co-workers were picketing the plant by walking a picket line across an access road leading from the plant to a main state arterial highway. At the time of the occurrence which resulted in plaintiff’s injuries, a large group of fellow employees had gathered and were present at the intersection of the access road and state highway where the picket line was established. Plaintiff’s picketing activities consisted in walking back and forth across the access road, meeting his fellow picketer in the center of the intersection and each proceeding in opposite directions to the edge of the road where each would about-face and return back across the road over the route he had just traveled. The chemical company had picket guards stationed at a checkpoint one hundred yards north of the picket line on the access road.
Defendant Dukes had been employed by the corporate defendant trucking company for a period of some twelve years. He was specifically selected by his employer to perform the mission of escorting the company transport trucks through the picket line into the struck chemical plant on the day in question because his past performance had demonstrated that he was levelheaded, exercised good judgment in the performance of his duties, knew how to get along with people, and would not “fly off the handle.” The company knew that the strike had created an atmosphere of tension ' around the plant and therefore endeavored to take precautions to see that the acrimonious feeling between the striking employees and the plant management would not be aggravated by any acts of those employed by this corporate appellant. Appellant Dukes was specifically instructed by his employer to handle himself as carefully as he could and not antagonize any union member on strike, or to engage in a discussion with any of them about the strike or say anything that would incur their antagonism. Appellant Dukes entered upon his duties on the day in question and escorted several of the company’s transport trucks through the picket line to the plant by driving immediately ahead of the trans *881 port in a small pickup truck. When approaching the picket line, Dukes stopped his truck on most occasions and waited for the pickets to clear the road before proceeding further. On one occasion, however, neither of the pickets was in the road as Dukes approached the line so he proceeded on into the plant without stopping.
Just prior to the incident which gave rise to this cause of action, Dukes was in the process of escorting one of his company’s transport trucks out of' the plant and through the picket line to the state highway. Dukes stopped at the checkpoint north of the picket line, and then proceeded forward at a slow rate of speed estimated to be about five miles per hour. As he approached the picket line being walked by appellee and his co-employee, each of the pickets had passed each other in the center of the road and was proceeding toward the edge of the road and out of the way of Dukes’ oncoming truck. It is at this point in the occurrence where the evidence, and inferences which may be drawn therefrom, reaches the point of dispute.
Plaintiff’s evidence established that plaintiff reached the edge of the road and turned to walk back across it when Dukes’ approaching vehicle was ten to fifteen feet short of the picket line. Dukes accelerated his speed and ran his truck forward without attempting to stop or take any evasive action. As a consequence Dukes’ vehicle struck plaintiff, throwing him to the pavement and inflicting upon him bodily injuries. Dukes stopped his truck and was heard by bystanders to say that if they didn’t move plaintiff out of the road, that he, Dukes, would run over the s.o.b.
Defendants’ evidence tended to establish that as Dukes approached the picket line he saw that both pickets had proceeded to the edge of the road and were not obstructing his line of travel; that without slowing his vehicle he proceeded on down the access road with the intention of entering the state highway; that just prior to reaching the picket line plaintiff turned and took one or two steps back into the road directly in front of the moving vehicle; that Dukes immediately applied his brakes and plaintiff walked into the front bumper causing him to fall to the ground. Dukes stopped his truck before running over plaintiff. Dukes testified that he assumed that plaintiff and the other picket would remain at the edge of the road in a position of safety and would not walk back across the line in front of his approaching vehicle; that he had no intention of striking plaintiff with his truck and was proceeding at such a slow rate of speed that he was able to stop it immediately without inflicting further injuries on plaintiff after he fell to the road.
The jury returned a verdict against Dukes for the sum of $125.00 compensatory damages and $5,000.00 punitive damages. The jury also returned a verdict against appellant trucking company in the sum of $5,000.00 punitive damages. The trial court ordered plaintiff to remit $2,500.00 of the punitive damagé award against appellant Dukes as a condition for denying the latter’s motion for a new trial, which remittitur appellee filed in the cause.
Appellants first contention is that the evidence summarized above is insufficient to establish that Dukes committed the intentional tort of assault and battery upon appellee. While in our view the evidence on this issue is susceptible of conflicting inference, we have nevertheless reached the conclusion that it was sufficient, if believed by the jury, to support the verdict in favor of appellee and against appellant Dukes. We are not at liberty to set aside a jury verdict where there is . competent evidence to support it, even though we might have reached a different conclusion had we been sitting as the trier of the facts.[1] The verdict and judgment against appellant Dukes, as modified by the remittitur entered by appellee, is therefore affirmed.
*882 The corporate appellant challenges the sufficiency of the evidence to establish that Dukes committed the tort against appellee while acting within the scope of his employment.
In the case of Reece v. Ebersbach[2] the plaintiff sued for the wrongful death of her husband resulting from the intentional tort of the defendants’ servant committed by chasing decedent into the woods and shooting him with a pistol. The complaint in that case failed to allege that the employer instructed his employee to assault the deceased, or ratified the wrongful act after its commission. In affirming the trial court’s judgment dismissing the complaint, the Supreme Court said:
“ * * * There is abundant authority that the master’s liability does not arise unless the tortious act was committed as an incident to the master’s business and while acting within the range of employment, or that the master directed the wrongful act or ratified same afterward. * * * ”
In defining the rule of law which fixes the liability of an employer for the tortious acts of his employee under the doctrine of respondeat superior, the Supreme Court in Weiss v. Jacobson[3] subscribed to the view expressed in 114 A.L.R. 1033 as follows:
“ ‘The majority of the well-reasoned decisions pointing out the farthest boundaries of the doctrine of respondeat superior have proceeded in accordance with the rule stated by Cooley, J., at an early stage in the development of modern views as to the liability of a master for the torts of his servant; “The liability of the master for intentional acts which constitute legal wrongs can only arise when that which'is done is within the real or apparent scope of the master’s business. It does not arise where the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could he supposed, from the nature of his employment, to have authorised or expected the servant to do * * ’ (Italics supplied)”
In Weiss the court ultimately held that the complaint was sufficient to state a cause of action and the employer’s liability should be determined by the jury upon the evidence to be adduced at the trial.
In Riddle v. Aero Mayflower Transit Co.[4] plaintiff sued for damages suffered as a result of a willful assault and battery committed on her by the corporate defendant’s employee. The employee, who was delivering furniture transported by him to the home occupied by plaintiff, unlawfully assaulted plaintiff and inflicted the injuries which gave rise to the cause of action. Judgment was entered in favor of defendant transit company, from which appeal was taken. In affirming the judgment the Supreme Court pointed out that the business of the corporation was that of a common carrier moving household goods. The employee was engaged to assist in carrying on that business, and not for the purpose of committing an assault on another which was in no way connected with the business of the corporate defendant. In affirming the judgment appealed, the Supreme Court said:
“This is not a case where the corporation knew that the employee was a dangerous person or was chargeable with notice or knowledge of any fact that he was a dangerous person and might attempt to commit such an assault. To hold the corporation liable in such a case as this without some knowledge or notice of some kind that the employee was a dangerous individual would require *883 an exploration into the field of intangibles and the adoption of some method not yet devised of determining the unknown and unusual desires and inclinations of the employee. The case of Chaney v. Frigidaire Corporation, 5 cir., 31 F.2d 977, 978, has correctly stated the law on this question.”
In Lockhart v. Friendly Finance Co.[5] this court affirmed a verdict rendered in favor of the plaintiff for damages resulting from the tortious act of defendant’s employee. In that case the evidence established that the corporate employer knew or should have known that in order to carry out its instructions, its employee would most likely commit a trespass against plaintiff; that the trespass resulted in a tangible benefit to the employer; and, with full knowledge of the facts surrounding the trespass, the employer ratified and accepted the benefits of the tortious act of its employee. None of those factors imposing liability on the employer are present in the case sub judice.
In Columbia By The Sea v. Petty[6] plaintiff recovered a judgment against the corporate defendant because of damages inflicted by the tortious act of defendant’s employee. In an effort to collect a restaurant bill from plaintiff, defendant’s employee followed plaintiff out of the restaurant into an adjoining building, engaged him in an argument which culminated in an altercation in which the employee bashed plaintiff over the head with an ashtray. In affirming the judgment rendered in favor of plaintiff in that case, the Second District Court of Appeal held that from the evidence the jury could have attributed the anger, assault and battery by the employee to overzealousness in the protection of what he envisioned as his employer’s interest. The jury being justified in finding that the employee was acting within the scope of his employment, liability was properly imposed upon the corporate employer. There is no evidence in the record before us from which such an inference as arose in the Petty case could reasonably be drawn by the jury.
In Dye v. Reichard [7] plaintiff recovered against the defendants, employer and employee, a judgment for both compensatory and punitive damages suffered as a result of an intentional assault and battery committed on plaintiff by the employee. The jury found from the evidence that the assault on plaintiff by the employee was committed while acting within the scope of his employment or, alternatively, that the employer negligently hired and retained in his employment the employee who possessed dangerous propensities which were known or should have been known by the employer, and for whose acts the employer was responsible. In affirming the judgment against the employer for the tortious acts of his employee, the Second District Court of Appeal said:
“The first question raised on appeal is the sufficiency of the evidence to support an action based on the doctrine of respondeat superior. A careful consideration of all the testimony, conflicting statements as to facts, various inferences and conclusions possible as to the employment, and the dangerous propensities of the defendant lead us to the conclusion that the matter is one that should be submitted to the jury. There is sufficient evidence, if believed by the jury, to support the verdict. * * * ”
The record before us contains no evidence from which the jury could lawfully have inferred that the corporate defendant was *884 negligent by employing or retaining in its employment the defendant, Dukes, or that he possessed dangerous propensities known or which should have been known by his employer.
It cannot be questioned but that plaintiff was injured by a truck driven by Dukes while in the performance of his duties as an employee of the defendant trucking company. This fact, however, is not determinative of the corporate defendant’s liability. We find no evidence in the record which either directly or by inference establishes that the corporate defendant directed its employee, Dukes, to commit an assault on plaintiff or anyone else, or that with knowledge of the facts surrounding the incident it thereafter ratified Dukes’ action in injuring plaintiff. The evidence is equally silent as to any facts from which the jury might lawfully have inferred that Dukes was a man of dangerous propensities known to his employer and, therefore, the latter’s act in employing him to carry out the mission in which he was engaged at the time plaintiff was injured was a negligent act for which it should be held legally responsible. We find in the record no evidence tending to prove that the act of the employee resulting in injury to plaintiff was committed in the furtherance of the employer’s interest or for its benefit. In fact, it is hard to conceive what steps the corporate defendant could have taken to guard against an assault and battery being committed by its employee upon plaintiff or any other strikers at the chemical plant, other than the precautions it took as shown by the evidence in this case.
Considering the evidence in a light most favorable to the prevailing party, it must be accepted'as a-fact that as Dukes approached the picket line being walked by plaintiff, he decided to intentionally drive his truck into plaintiff regardless of the damages which might result as a consequence thereof. The evidence affirmatively establishes that such a course of conduct on the part of Dukes was neither necessary nor expedient in order to safely escort the transport truck through the picket line and onto the state highway. Dukes had previously escorted the transport through the picket line on numerous occasions that day without untoward incident. Nothing happened in this regard to indicate that any difficulty would be encountered in peacefully accomplishing his assigned duties on the occasion when plaintiff was injured. There is no evidence from which the jury could have reasonably concluded that Dukes believed, or had reason to believe, that it was necessary to run down plaintiff with his truck in order to pass through the picket line, or that he was required to injure plaintiff in the manner shown by the evidence in order to serve the interest of his employer. The evidence most favorable to the plaintiff leads to the unerring conclusion that Dukes stepped aside from his employment in committing an intentional tort against plaintiff which his corporate employer neither directed, ratified, nor could have expected him to do.
From the foregoing we conclude that because of an absence of any evidence from which the jury could lawfully have found that the assault and battery by Dukes upon plaintiff was committed while acting within the course and scope of his employment under circumstances for which the corporate defendant may be held legally liable, the trial court should have granted that defendant’s motion for a directed verdict at the conclusion of the evidence. The judgment against appellant, M R & R Trucking Company, is accordingly reversed and the cause remanded with directions that the complaint be dismissed with prejudice as to this party.
Reversed in part, affirmed in part.
JOHNSON and SPECTOR, JJ., concur.

. Chilton v. Dockstader, (Fla.App.1961) 126 So.2d 281.

. Reece v. Ebersbach, 152 Fla. 763, 9 So.2d 805, cert. den. 318 U.S. 784, 63 S.Ct. 855, 87 L.Ed. 1151, reh. den. 319 U.S. 781, 63 S.Ct. 1155, 87 L.Ed. 1725.

. Weiss v. Jacobson, (Fla.1953) 62 So.2d 904, 906.

. Riddle v. Aero Mayflower Transit Co., (Fla.1954) 73 So.2d 71.

. Lockhart v. Friendly Finance Co., (Fla. App.1959) 110 So.2d 478.

. Columbia By The Sea, Inc. v. Petty, (Fla.App.1963) 157 So.2d 190.

.Dye v. Reichard, (Fla.App.1966) 183 So. 2d 863, 864.