350 So.2d 1128 (1977)
Hooper ALEXANDER, III, As Administrator of the Estate of Margaret M. Alexander, Deceased, Petitioner,
v.
ALTERMAN TRANSPORT LINES, INC., a Florida Corporation, and Charles E. Penley, Respondents.
No. EE-43.
District Court of Appeal of Florida, First District.
October 19, 1977.
*1129 Joseph D. Farish, Jr., and Alice Cortina Post of Farish & Farish, West Palm Beach, for petitioner.
E. Harper Field and Helen C. Ellis of Keen, O'Kelley & Spitz, Tallahassee, for respondents.
RAWLS, Judge.
With the assistance of this court, petitioner-plaintiff has encountered considerable difficulty in sustaining his allegation seeking to recover punitive damages. For the reasons stated therein, we granted certiorari in a prior consideration of petitioner's complaint[1] and held that "[t]he bare allegations of gross negligence on the part of an employee in operating an employer's motor vehicle are not sufficient to sustain a claim for punitive damages on the part of an employer." Upon remand, petitioner filed a third amended complaint, alleging therein that by reason of the truck driver's grossly negligent acts of such willful, wanton and outrageous character his employer was liable for punitive damages. An amendment to the third amended complaint was subsequently filed by petitioner alleging that Penley, the driver of Alterman's truck, was operating same in furtherance of the interests of his employer, had been adjudicated guilty of manslaughter, and thus Penley and Alterman were each liable for punitive damages. In dismissing the claim for punitive damages as to Alterman, the trial court cited our prior mandate and Sideris v. Warrington Motor Company, 181 So.2d 650 (Fla. 1st DCA 1966). Due to the prior history of this case, we exercise our discretion to entertain this question through the offices of common law certiorari.
The basic issue is whether or not an employer, pursuant to the doctrine of respondeat superior, is punitively liable for the criminal acts of an employee who was allegedly furthering the interests of his employer.
In the year 1763, the doctrine of punitive damages was articulated by Lord Camden in Huckle v. Money,[2] wherein he stated:
"The personal injury done to [the plaintiff] was very small so that if the jury had been confined by their oath ... perhaps £ 20 damages would have been thought damages sufficient; but the small injury done to the plaintiff . . did not appear to the jury in that striking light in which the great point of law touching the liberty of the subject appeared to them at the trial ... [I] think they have done right in giving exemplary damages. To enter a man's house by virtue of a nameless warrant, in order to procure evidence, is worse than the Spanish Inquisition; a law under which no Englishman would wish to live an hour; it was a most daring attack upon the liberty of the subject."
The foregoing excerpt demonstrates a factual situation in which punitive damages have long been sanctioned by permitting the jury to award punitive, vindictive or exemplary damages to the aggrieved individual not only to recompense the sufferer but to punish the offender.
*1130 Of course, Alterman is liable for all compensatory damages resulting from the acts of its employee in operating the company's motor vehicle by reason of its status as employer and the dangerous instrumentality doctrine. But, what wrong did Alterman commit that demanded it be punished? According to the third amended complaint, Alterman's gross negligence was solely the act of operating a trucking business. Not a single allegation is found as to Alterman's negligently failing to investigate or to otherwise verify Penley's ability to operate its truck in a law abiding manner; there is not a single allegation that Alterman knew or should have known Penley's propensity to consume alcoholic beverages; there is not a single allegation that Alterman knew or should have known that Penley would operate its truck in a "grossly negligent manner and with outrageous, willful, wanton and utter disregard for other vehicles and users". In fact, the allegations that Penley was driving the tractor-trailer truck, while under the influence of alcohol or some other drug at a speed that was greater than reasonable or prudent, and was adjudicated guilty of manslaughter are repugnant to the doctrine of respondeat superior or that he operated said vehicle in furtherance of the interests and benefit of his employer.
This court's opinion in M R & R Trucking Company v. Griffin, 198 So.2d 879 (Fla. 1st DCA 1967), offers some light upon the subject. After reviewing the record which reflected that the driver of the employer's truck intentionally drove across a picket line resulting in injury to one individual, we concluded that the employer was not liable for either compensatory or punitive damages. In reaching this conclusion, this court stated:
"It cannot be questioned but that plaintiff was injured by a truck driven by Dukes while in the performance of his duties as an employee of the defendant trucking company. ... We find in the record no evidence tending to prove that the act of the employee resulting in injury to plaintiff was committed in the furtherance of the employer's interest or for its benefit. In fact, it is hard to conceive what steps the corporate defendant could have taken to guard against an assault and battery being committed by its employee upon plaintiff or any other strikers at the chemical plant, other than the precautions it took as shown by the evidence in this case."
Paraphrasing another statement in the Griffin opinion, the third amended complaint before us contains no allegation from which a jury could lawfully infer that the corporate defendant was negligent by employing or retaining in its employment the defendant, Penley, or that he possessed dangerous propensities known or which should have been known to his employer.
As stated in Gulf Shore Seafood & Co., Inc. v. Cities Service Company, 501 F.2d 957 (5th Cir.1974): "... the actor must have knowledge, actual or constructive, of the likelihood that his conduct will cause injury to other persons or property ... ." Query: What knowledge, actual or constructive, did Alterman possess of the likelihood that its driver would engage in such conduct that Alterman would be subjected to a punitive civil penalty for the criminal actions of its employee? Sideris v. Warrington Motor Company, supra, is in point. There, in a strikingly similar factual situation, this court held that the owner of a motor vehicle was not liable for punitive damages solely by reason of its status as employer.
As stated at the outset, this court has contributed to petitioner's difficulty in framing allegations which would sustain a jury verdict for punitive damages. Solely for this reason, certiorari is granted for the purpose of remanding with directions to the trial judge to permit petitioner to once again amend his complaint as to punitive damages; otherwise, certiorari is denied.[3]
McCORD, C.J., and BOYER, J., concur.
NOTES
[1] Alexander v. Alterman Transport Lines, 327 So.2d 860 (Fla. 1st DCA 1976).
[2] Huckle v. Money, 2 Wils.K.B. 205, 95 Eng. Reps. 768 (1763).
[3] We are not unaware of the Florida Supreme Court's recent opinion in Bould v. Touchette, 349 So.2d 1181, opinion filed July 28, 1977, rehearings denied September 13, 1977. The single issue that we have here considered was not considered or passed upon by the Supreme Court in its Bould opinion.