437 So.2d 1061 (1983)
U.S. CONCRETE PIPE COMPANY, etc., et al., Petitioners,
v.
Dorothy BOULD and Edward Simonsen, Jr., Etc., et al., Respondents.
No. 57165.
Supreme Court of Florida.
July 7, 1983.
Rehearing Denied October 11, 1983.
*1062 Richard A. Sherman of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Miami, for petitioners.
Sam Daniels of Daniels & Hicks, Miami, for respondents.
ADKINS, Justice.
By petition for writ of certiorari, we have for review a decision of the District Court of Appeal, Fourth District, which allegedly conflicts with decisions of this Court and the district courts of appeal on the same point of law. The case below, Hartford Accident & Indemnity Co. v. U.S. Concrete Pipe Co., 369 So.2d 451 (Fla. 4th DCA 1979), held that the instructions given to the jury allowed a finding of active negligence on the part of the corporate employer, thereby imposing punitive damages against the employer and relieving its insurer from liability for the punitive damages. Pursuant to Article V, Section 3(b)(3), Florida Constitution (1972), we accepted jurisdiction of the case on grounds of conflict with Travelers Insurance Co. v. Wilson, 261 So.2d 545 (Fla.4th DCA 1972).
The facts of the case are set out in previous decisions of this Court and the Fourth District Court of Appeal. Petitioner U.S. Concrete Pipe Co. was insured by respondent Hartford Accident & Indemnity Co. An automobile accident caused by the negligence of one of petitioner's employee-drivers resulted in two deaths. After trial, final judgments for compensatory and punitive damages were entered against the driver *1063 and U.S. Concrete. The district court reversed those judgments as excessive. Touchette v. Bould, 324 So.2d 707 (Fla. 4th DCA 1975). This Court quashed that opinion and mandated the reinstatement of the trial court's judgments. Bould v. Touchette, 349 So.2d 1181 (Fla. 1977). Upon remand, the district court entertained two interlocutory appeals from post-judgment orders of the trial court. One of those appeals forms the basis of this review.
The pleadings sought recovery against U.S. Concrete on the theory of the respondeat superior doctrine and also for negligence in retaining an unfit driver in its employment. The trial court's instructions to the jury contained the following references to punitive damages:
Under the law of Florida, liability for punitive damages may be imposed upon an employer for the acts of his employees when those acts are of a character to warrant the imposition of such damages upon the employee, as where the employee has acted wantonly or willfully or with a reckless indifference to the rights of others. An employer may be liable in punitive damages for the acts of his employee done in the scope of his employment, if he has failed to exercise due and reasonable care in retaining him as an employee.
The jury awarded $800,000 punitive damages but did not specify whether U.S. Concrete was held on its vicarious liability or because of its alleged negligent employment of the truck driver. During the course of the trial, Hartford neither objected to the charge given nor requested any further instructions on this question, special interrogatories to the jury or special verdict forms.
The fourth district interpreted the above instruction to describe "active negligence for which U.S. Concrete would be liable as opposed to vicarious liability by reason of the relationship of master and servant." Hartford Accident & Indemnity Co. v. U.S. Concrete Pipe Co. 369 So.2d at 453. No instruction was given regarding punitive damages on a theory of vicarious liability alone. The court concluded that the jury imposed punitive damages against U.S. Concrete solely due to the company's active negligence in retaining the negligent employee.
U.S. Concrete construes the instruction as allowing the jury to assess punitive damages against it only on a vicarious basis, without finding the company guilty of willful or wanton misconduct. The petitioner argues that Hartford had the burden of establishing the facts necessary to avoid its contract of insurance. According to U.S. Concrete, public policy and case law forbid insuring against willful, wanton and malicious conduct, but not the negligent conduct of which the company is accused.
Hartford contends that it carried the requisite burden of proof and that no conflict exists between the decisions of the district court below and Travelers Insurance Co. v. Wilson. Furthermore, the respondent claims that U.S. Concrete is bound by the doctrine of law of the case by failing to challenge the trial court's instruction in the previous appeal.
This last point raised by respondent has no merit. The doctrine of law of the case is limited to rulings on questions of law actually presented and considered on a former appeal. 3 Fla.Jur.2d Appellate Review §§ 421-22 (1978), and cases cited therein. The order granting judgment in favor of U.S. Concrete against Hartford for punitive damages was the subject of a post-judgment interlocutory appeal, which this Court directed the fourth district to entertain in our previous opinion. Bould v. Touchette 349 So.2d at 1187. Since the former appeal addressed the excessiveness of the punitive damage award, questions pertaining to the liability for payment of the award were not at issue in the case. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 548 (Fla. 1981); Alexander v. Alterman Transport Lines, Inc., 350 So.2d 1128, 1130 (Fla. 1st DCA 1977). The obligation of the insured or the insurance company to pay the punitive damages was properly raised in this appeal.
*1064 Florida public policy prohibits liability insurance coverage for punitive damages assessed against a person because of his own wrongful conduct. Commercial Union Insurance Co. v. Reichard, 404 F.2d 868 (5th Cir.1968); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962); Travelers Insurance Co. v. Wilson; Nicholson v. American Fire and Casualty Insurance Co., 177 So.2d 52 (Fla.2d DCA 1965). The Florida policy of allowing punitive damages to punish and deter those guilty of aggravated misconduct would be frustrated if such damages were covered by liability insurance.
However, Florida public policy does not preclude insurance coverage of punitive damages when the insured himself is not personally at fault, but is merely vicariously liable for another's wrong. 31 Fla.Jur.2d Insurance § 876 (1981). As stated in Sterling Insurance Co. v. Hughes, 187 So.2d 898 (Fla.3d DCA), cert. denied, 194 So.2d 622 (Fla. 1966):
However, it is generally held that there is a distinction between the actual tortfeasor and one only vicariously liable and that therefore public policy is not violated by construing a liability policy to include punitive damages recovered by an injured person where the insured did not participate in or authorize the act.
Id. at 900 (footnote omitted).
Travelers Insurance Co. v. Wilson involved a claim for punitive damages against an insured owner of a motor vehicle based on his vicarious liability. The fourth district ruled that public policy did not bar insurance coverage of punitive damages awarded on a vicarious theory, where the owner committed no willful or wanton misconduct. The decision emphasized that the punitive damages must be assessed against the insured solely on the basis of vicarious liability arising out of ownership, and not because of any active wrongdoing or misconduct on his part which itself justifies imposition of punitive damages, to shift the burden to the insurance carrier. 261 So.2d at 548.
Punitive damages cannot be assessed for mere negligent conduct, but must be based on behavior which indicates a wanton disregard for the rights of others. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936). Even gross negligence, by itself, will not support an award of punitive damages. Florida Power Corp. v. Scudder, 350 So.2d 106 (Fla.2d DCA 1977), cert. denied, 362 So.2d 1056 (Fla.), appeal dismissed, 439 U.S. 922, 99 S.Ct. 303, 58 L.Ed.2d 315 (1978). In Clooney v. Geeting, 352 So.2d 1216 (Fla.2d DCA 1977), the plaintiff alleged that an employer knew its employee was not physically or mentally able to drive its truck. The court held that this knowledge was not sufficient to sustain a claim for punitive damages because the allegations did not show the necessary malice or wanton, willful or outrageous conduct. "[G]ross negligence is not enough to give rise to punitive damages  there must be a wilful and wanton disregard for the rights of others." Id. at 1219.
The facts in the present case do not show that U.S. Concrete was guilty of a willful and wanton disregard for the rights of others. In addition, the jury instructions referred to liability for failure to exercise due and reasonable care, i.e., negligence. This means that the jury verdict does not support a finding of wanton or willful misconduct. The trial court's charge seeks to impose punitive damages on U.S. Concrete because of its employee's willful and wanton behavior and its simple negligence and not because of willful and wanton misconduct of U.S. Concrete. See Mercury Motors Express, Inc. v. Smith, 393 So.2d at 549. The decision of the fourth district below concluded that the jury imposed punitive damages against U.S. Concrete solely for the company's active negligence in retaining the employee. This holding is in conflict with the weight and trend of Florida public policy and case law.
The liability of an insurer for punitive damages assessed against an employer and a negligent employee-driver was discussed in Morrison v. Hugger, 369 So.2d 614 (Fla.2d DCA 1979). The employer's insurance company attempted to avoid the payment *1065 of punitive damages as being against public policy or illegal. The district court noted that since either position taken by the insurer is an affirmative defense, the burden of proof rests on the insurance company to demonstrate that the coverage was inapplicable. The insurer must therefore establish that the jury awarded punitive damages against the insured on the basis of the insured's own conduct, rather than on the basis of vicarious liability. Because the facts supported the insurance coverage and because it was impossible to tell upon which basis the jury rendered its verdict, the court placed the judgment for punitive damages on the insurance company.
In Universal Underwriters Insurance Corp. v. Reynolds, 129 So.2d 689 (Fla.2d DCA 1961), the jury was instructed that it could return damages for both personal injuries (covered by the policy) and consequential damages (not covered by the policy) and both were included in a general verdict. In other words, the verdict was not broken down so as to designate the portion for personal injury and the portion for consequential damages. Since only a portion of the verdict was covered by the policy, the insured had the burden of showing which portion of the verdict was within the coverage of the policy. On the other hand, in the present case and in Morrison v. Hugger, the entire amount was classified as punitive damages. The only question is whether coverage existed for any portion. The issue in this case and in Morrison is one of coverage, while the issue in Reynolds was one of allocation.
The critical question here is whether the burden was upon Hartford to demonstrate non-insurability. This question was settled in Phoenix Insurance Co. v. Branch, 234 So.2d 396 (Fla. 4th DCA 1970), when the court stated the general rule as follows:
The burden of proving an avoidance of the action on the basis that the loss is not covered, since it comes within a specific exclusion contained in the policy is upon the insurer.
Id. at 398 (citations omitted).
If a judgment includes elements for which an insurer is liable and also elements beyond the coverage of the policy, the burden of apportioning or allocating these damages is on the party seeking to recover from the insurer. On the other hand, if the evidence raises a question as to whether the entire claim is beyond the coverage of the policy, the burden is upon the insurer to show that there is no coverage. Non-insurability is a defensive matter, with the burden resting on the insurer.
A similar situation arose in Commercial Union Insurance Co. v. Reichard, 404 F.2d 868 (5th Cir.1968), where the trial judge ruled that the burden of proof was upon the insurer. The United States Circuit Court of Appeals agreed that if the jury could have based the verdict for punitive damages on either the vicarious liability of the employer or the employer's own misconduct, it would have been impossible to determine from the verdict which theory produced the award. It was unnecessary to determine who had the burden to prove the impossible, as the instructions did not charge the jury that it could find the employer subject to punitive damages on account of his hiring a dangerous employee. In other words, the instruction to the jury limited the recovery for punitive damages to the claim based upon vicarious liability.
In the present dispute, if the instruction given by the trial court allowed the jury to award punitive damages for negligent hiring or on vicarious liability, the burden fell upon Hartford to request additional instructions or to use special verdicts. Neither was done, so Hartford cannot complain at this point. The record fails to show that the trial court committed error in entering judgment against Hartford.
For the above reasons, the decision of the district court of appeal is quashed and the cause is remanded with instructions to reinstate the order of the trial court requiring the insurance company to pay the punitive damage award.
It is so ordered.
BOYD, EHRLICH and SHAW, JJ., concur.
*1066 EHRLICH, J., concurs with an opinion, in which ADKINS, BOYD and SHAW, JJ., concur.
ALDERMAN, C.J., dissents with an opinion.
OVERTON, J., dissents with an opinion.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
EHRLICH, Justice, concurring.
This case requires the Court to address the impact of Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), on the previously established Florida case law allowing insurance to cover punitive damages imposed under a theory of vicarious liability. Morrison v. Hugger, 369 So.2d 614 (Fla.2d DCA 1979); Travelers Insurance Co. v. Wilson, 261 So.2d 545 (Fla.4th DCA 1972); Sterling Insurance Co. v. Hughes, 187 So.2d 898 (Fla.3d DCA), cert. denied, 194 So.2d 622 (Fla. 1966).
Long before our holding in Mercury Motors, this Court had acknowledged the vicarious liability of an employer in punitive damages for the willful, wanton or malicious acts committed by his employee in the course of his employment. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936). To recover punitive damages from an employer under the doctrine of respondeat superior, plaintiff had only to plead and prove the employer-employee relationship, that the acts were willful, wanton or malicious in nature and that they were performed within the scope of employment. Nichols v. McGraw, 152 So.2d 486 (Fla. 1st DCA 1963). The employer's liability was predicated solely upon the master-servant relationship; no separate acts of the employer were at issue. See Travelers Insurance Co. v. Wilson, Sterling Insurance Co. v. Hughes; but see Alexander v. Alterman Transport Lines, Inc., 350 So.2d 1128 (Fla. 1st DCA 1977).
Mercury Motors, in effect, added one more ingredient to the recipe for vicarious liability for punitive damages. Now a plaintiff must also plead and prove "some fault" on the part of the employer. 393 So.2d at 549. But Mercury Motors did not purport to change the nature of the liability.
(3) Before an employer may be held vicariously liable for punitive damages under the doctrine of respondeat superior, there must be some fault on his part. (4) Although the misconduct of the employee, upon which the vicarious liability of the employer for punitive damages is based, must be willful and wanton, it is not necessary that the fault of the employer, independent of his employee's conduct, also be willful and wanton. It is sufficient that the plaintiff allege and prove some fault on the part of the employer which foreseeably contributed to the plaintiff's injury to make him vicariously liable for punitive damages.
Id. (emphasis supplied). The additional element of employer's fault does not itself create a direct liability for punitive damages.
Hartford Accident and Indemnity Company asserts that vicarious liability predicated on any degree of fault on the employer's part would invoke the public policy against allowing a wrongdoer to insure himself against liability for punitive damages. I think this misinterprets the effect of both Mercury Motors and the public policy.
The purpose of punitive damages is, as the name indicates, to punish one whose wrongdoing surpasses mere mistake, negligence or thoughtlessness and to deter others from similar misconduct. When a tortfeasor has acted with wanton or willful disregard of the safety of others, punitive damages are imposed as a measure of society's disapproval of such conduct. If the burden of paying that penalty may be shifted to an insurer (and ultimately to society at large), the wrongdoer has no impetus to "learn his lesson" and change his behavior. Thus, Florida has followed the general rule that insurance may not cover punitive damages. See also Nicholson v. American Fire & Casualty Insurance Co., 177 So.2d 52 (Fla.2d DCA 1965); Northwestern National *1067 Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962).
At the same time, Florida has acknowledged an exception to this rule when the punitive damages are imposed on the basis of vicarious responsibility for the acts of another. Travelers Insurance Co. v. Wilson; Sterling Insurance Co. v. Hughes. See also Annot., 16 A.L.R. 4th 11 (1981). The rationale underlying this exception is obvious. When an employer's liability for punitive damages arises solely from the fact that he relies upon employees, there can be no action to punish or deter. Certainly no social policy will be furthered by hindering the growth of businesses beyond that to which one man can personally attend. Without liability insurance coverage, a businessman can ill afford the risk of delegating responsibility to employees who may eventually commit some willful, wanton or malicious tort in the scope of his employment.
Nor is the situation changed by Mercury Motors' addition of the element of "some fault" on the employer's part. "Some fault" does not necessarily rise to the level of misconduct for which society demands punishment and deterrence. The existence of any liability insurance is a recognition that no one is infallible. When decisions are made, the possibility always exists that the choice will be an unfortunate one. When damages arise from that choice and when hindsight shows the choice to have been unreasonable or imprudent so as to make the decision-maker liable for those damages, that liability may be covered by insurance. Businessmen must daily make decisions and entrust responsibility to employees in order to keep the enterprise functioning. If "some fault" or simple negligence in making a managerial decision could result in an uninsurable liability for punitive damages arising from the acts of an employee, there is a genuine fear that few undertakings could survive the risks inherent in doing business.
This is not to say that an employer may always shift the responsibility to pay punitive damages to his insurer. If the employer's fault is in the nature of willful and wanton disregard for the safety of others, the employer should be punished for his misconduct and public policy would prohibit shifting the liability away from the wrongdoer onto an insurance carrier. But in that case the punitive damages are imposed for the employer's active negligence and his liability should not be characterized as vicarious. The nature of the liability must obviously depend upon the facts of each case and would require proper pleading and proof. See Dayton Hudson Corp. v. American Mutual Liability Insurance Co., 621 P.2d 1155 (Okl. 1980).
Today's decision reaffirms Florida's recognition of the vicarious liability exception to the general rule that an insurer may not pay punitive damages. The facts of this case bring it within that exception, thus Hartford is liable for the punitive damages assessed against petitioner.[1]
ADKINS, BOYD and SHAW, JJ., concur.
ALDERMAN, Chief Justice, dissenting.
This case presents a dilemma. On the one hand, public policy generally precludes insuring against punitive damages. This is because such damages are intended to punish a defendant for his willful and wanton misconduct. He is not allowed to escape punishment by insuring against this risk. On the other hand, under our holding in Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), an employer may be held vicariously liable for punitive damages arising from the willful and wanton misconduct of its employees through the doctrine *1068 of respondeat superior if there is "some fault" on its part. In that situation, however, the employer can insure against the risk of vicarious liability for punitive damages.
In the present case, the majority concludes that the employer's insurance company must pay the punitive damages award because the employer was not guilty of a willful and wanton disregard for the rights of others. At most, it was guilty of simple negligence and thereby became only vicariously liable for punitive damages resulting from its employee's willful and wanton misconduct. I agree that if we retain the holding of Mercury Motors and its predecessors, then the conclusion of the majority is appropriate. An employer should be permitted to insure against any vicarious liability for punitive damages that may result from his simple negligence.
But why should an employer be held vicariously liable for punitive damages? If he is not guilty of willful and wanton misconduct, there are no public policy reasons to subject him to liability for punitive damages. Likewise, no public policy reasons are served by shifting to an insurer (and ultimately to society at large) the burden of paying an award of punitive damages based upon the vicarious liability of an employer. Either alternative is inconsistent with the purposes of punitive damages.
Certainly, the purpose of punitive damages is not to compensate the plaintiff, and any benefit the plaintiff receives from such an award is only incidental. In fact, the plaintiff has no right to punitive damages. St. Regis Paper Co. v. Watson, 428 So.2d 243 (Fla. 1983). He has been fully compensated for his injury by the award of compensatory damages. From the point of view of the plaintiff, punitive damages are merely a windfall. The windfall is even greater when plaintiff is permitted to look vicariously to the "deep pocket" of the employer.
I believe the only logical solution to the dilemma posed by these conflicting principles would be to hold that there is no vicarious liability on the part of an employer for punitive damages. To accomplish the purposes of punitive damages, the punishment should fall squarely on the shoulders of the wrongdoer. If an employer has been guilty of willful and wanton misconduct, he may be directly punished. If he has not been guilty of willful and wanton misconduct, he should not be held vicariously liable for punitive damages.
This is a matter of great importance in the area of tort litigation in this state, and I am hopeful that The Florida Bar's recently created Tort Litigation Review Commission will carefully study this question and make a recommendation to the legislature to eliminate an employer's vicarious liability for punitive damages.
OVERTON, Justice, dissenting.
I dissent from the majority opinion. The majority view makes a charade of punitive damage legal principles and places the punishment for the wrongdoing on the public rather than on the wrongdoer. This decision has nothing to do with punishment. Neither the insurer nor the insured is guilty of willful or wanton misconduct, but the insurance company is required to pay the punitive damage award and the public is required to pay increased premiums while the one who engaged in the willful and wanton misconduct is not punished in any way. Establishing as a matter of public policy that additional damages beyond compensatory damages may be recovered against an employer's insurance company for the willful and wanton misconduct of an employee should be left to the legislature. We should not camouflage such additional damages as punitive damages when the wrongdoer goes unpunished for the willful and wanton misconduct which caused the injury.
In his concurring opinion, Justice Ehrlich argues that where the employer is guilty of only simple negligence, it should be able to protect itself by shifting to its carrier the responsibility for paying punitive damages assessed because of the willful and wanton misconduct of an employee. I recognize that an employer should be able to protect *1069 itself from its simple negligence, but now, under the majority opinion, we find it is proper to advise a jury that they may assess punitive damages against the employer "as punishment and as a deterrent"[1] for the conduct of its employee. In this type of circumstance, what evidence should be allowed to establish the financial condition of the employer? Should the limits of the insurance policy be part of the financial information submitted to the jury? We advise the jury that they "may consider the financial resources of such defendant in fixing the amount of such damages."[2] Since the purpose of punitive damages is both punishment and deterrence, it apparently would be proper to argue to the jury that they should award an amount of punitive damages sufficiently in excess of the policy limits so that the award would in fact be a punishment or a deterrent to the employer for his employee's conduct. The problem is that in this situation punitive damages are being assessed against someone other than the wrongdoer.
My solution is to apply punitive damages, as they were originally intended, against the person or entity which committed the willful and wanton act. I would prefer to reconsider and recede from Mercury Motors but, given that decision, if punitive damages are going to be assessed in a case like this, and if the purpose of these damages is punishment and deterrence, they should be assessed against the employer rather than its insurance company. For that reason, I concur with Justice McDonald.
McDONALD, Justice, dissenting.
In Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), this Court held that a corporate employer is not vicariously liable for punitive damages caused by the willful and wanton conduct of a driver of its vehicle unless, in addition to the driver's misconduct, there is some fault or negligence by the employer. This separate fault of the employer, if coupled with wanton conduct of the employee, need not be of a willful or wanton nature to make the employer liable for punitive damages. We could, and perhaps should, have gone further and held that an employer was not liable for punitive damages arising from the willful and wanton misconduct of a driver of its motor vehicle unless the employer himself was guilty of some flagrant misconduct.
The instruction given by the trial judge in this case was consistent with Mercury Motors. It followed the urging of plaintiffs' counsel and was predicated upon a recitation of 25 C.J.S. Damages § 125(4) (1966). The plaintiffs' complaint alleged that the employer knew its driver was tired due to excessive driving. They also urged at trial that, because of his history of accidents, the employer negligently retained him as a driver. It was upon one of these allegations, coupled with the wanton conduct of the driver, that the jury predicated its award, which this Court affirmed. Bould v. Touchette, 349 So.2d 1181 (Fla. 1977). It was urged in Bould that the punitive damages were improper because they were excessive and shared no rational basis with the compensatory damages. Those contentions were rejected.
Hartford's policy of insurance provides:
The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage.
*1070 Its policy specifically neither includes nor excludes punitive damages. I have a problem equating "punitive damages" to "damages because of bodily injury" and even without public policy considerations question coverage for punitive damages since those damages do not arise from bodily injury or property damage but rather as punishment for misconduct. In any event, since there was some complicity of U.S. Concrete Pipe which caused it to be subject to the punitive damages award, I am persuaded that the better view would be to hold that public policy prevents insurance protection for liability for punitive damages in this type of situation. To support this conclusion I cite with approval and adopt Nicholson v. American Fire & Casualty Insurance Co., 177 So.2d 52 (Fla.2d DCA 1965). That decision in turn cited Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962), which I approve. I recognize that public policy does not prevent insurance coverage for punitive damages in instances where the liability is purely vicarious. I distinguish this by saying that in this case the jury found, as it was required to do, some personal involvement of the employer with the employee's wanton conduct when it sent an employee who, because of his physical condition or driving habits, was prone to being involved in an accident. I repeat the following language in Northwestern:
The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well [as] nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.
Id. at 440-41. I would hold that U.S. Concrete Pipe alone, without the aid of insurance, should pay the punitive damages award.[*]
OVERTON, J., concurs.
NOTES
[1] I am not unmindful that the bottom line of the Court's holding brings into irreconcilable conflict two principles, namely, that punitive damages are designed to punish, but that when punitive damages may be insured against, there is no punishment. How is U.S. Concrete being punished when Hartford had to pay the punitive damage award? It isn't, and the punitive damage award simply becomes an enhancement of damages to the plaintiff. This conflict can only be resolved by a holding that there can be no vicarious liability for punitive damages.
[1] Fla.Std.Jury Instr. (Civ.) 6.12 reads as follows:

If you find for (claimant) and find also that [the defendant] [any defendant whom you find to be liable to (claimant)] acted with malice, moral turpitude, wantonness, wilfulness or reckless indifference to the rights of others, you may, in your discretion, assess punitive damages against such defendant as punishment and as a deterrent to others. If you find that punitive damages should be assessed against [the] [any] defendant, you may consider the financial resources of such defendant in fixing the amount of such damages. [You may assess punitive damages against one defendant and not the other[s] or against more than one defendant in different amounts].
[2] Id.
[*] In Bould v. Touchette, 349 So.2d 1181 (Fla. 1977), we noted that the punitive damages award here amounted to 6.2% of the net worth of U.S. Concrete Pipe and was consistent with the policy of hurting, but not bankrupting, one for conduct resulting in punitive damages.